Judith Brown Chomsky
LAW OFFICES OF JUDITH BROWN CHOMSKY
8120 New 2nd Street
Elkins Park, PA 19027
Telephone: (215) 266-7170
Facsimile: (866) 216-4358
judithchomsky@icloud.com

Marco Simons
LAW OFFICE OF MARCO SIMONS
1050 Connecticut Ave #65225
Washington, DC 20035
Telephone: 917-696-3304
marco.b.simons@gmail.com
(*Pro hac vice*)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Hoa Thi Do, John Doe 1, John Doe 2, John Doe 3, John Doe 4, <br><br> Plaintiffs, on behalf of themselves and all others similarly situated, <br><br> v. <br><br> Formosa Plastics Corporation, U.S.A., Formosa Plastics Corporation, and Susan Wang, individually and as director of Formosa Ha Tinh Steel Corporation, Formosa Plastics Corporation, U.S.A. and Formosa Plastics Corporation. <br><br> Defendants. | Cause No. 19-14390 <br><br> **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Hòa Thị Đỗ[1] and Plaintiffs using the pseudonyms John Doe 1, John Doe 2, John

Doe 3, and John Doe 4, through counsel, and on behalf of themselves and all other similarly

---

[1] Plaintiff's name in the Vietnamese style is Đỗ Thị Hòa, as in Vietnam names are written with the family name first and first names last. However, throughout this complaint we will refer to her using the U.S. style with her family name (Đỗ) last and first name (Hòa) first.

situated, seek compensatory and punitive damages and other appropriate relief from Defendants Formosa Plastics Corporation, U.S.A., Formosa Plastics Corporation, and Susan Ruey Hwa Wang, pursuant to the following allegations:

## I.    NATURE OF THE ACTION

1.     This case arises out of Defendants' responsibility for the largest environmental disaster in the history of Vietnam, the 2016 Formosa Ha Tinh toxic waste discharge. The disaster resulted in loss of life, devastation of the local economy and environment, and substantial health risks for the local population.

2.     Plaintiffs are members of communities from central Vietnam, in the region of the toxic waste discharge, whose livelihoods are primarily dependent on the fishing trade and related industries, as well as one whose husband died as a result of exposure of toxic waste discharged by Formosa Ha Tinh Steel Corporation ("Formosa Ha Tinh").

3.     Beginning in April 2016, the Formosa Ha Tinh steel mill released substantial quantities of toxic pollutants into the ocean, causing massive fish deaths, decimating the local economy, poisoning the water and marine environment, and harming those who consumed polluted seafood or had contact with the polluted water.

4.     At all relevant times, Defendants Formosa Plastics Corporation, U.S.A. ("Formosa U.S.A.") and its parent, Defendant Formosa Plastics Corporation ("Formosa Plastics"), controlled the Formosa Ha Tinh Steel Corporation, and jointly managed and operated Formosa Ha Tinh for their benefit, through the integrated enterprise known as Formosa Plastics Group. Defendant Susan Ruey Hwa Wang ("Susan Wang") is a Formosa Plastics Group executive who was personally involved in management of Formosa Ha Tinh, including decisions that caused the toxic waste discharge, and bears responsibility for the disaster individually and as

a director of Formosa Ha Tinh, Formosa U.S.A. and Formosa Plastics. Collectively, Formosa U.S.A., Formosa Plastics, and Susan Wang are referred to as "Defendants" herein, unless otherwise specified.

5.     Plaintiffs bring this complaint for damages to remedy injuries to their persons, property, and livelihoods from this disaster. These harms were caused by the wrongful conduct of Defendants, acting on their own and/or through its agents and employees, including their divisions and/or subsidiaries. Defendants' conduct has violated the statutes and common tort law of New Jersey, Vietnam, and the laws of any other applicable jurisdiction.

## II.     PARTIES

6.     All plaintiffs are citizens of Vietnam. All but one plaintiff currently reside in the central region of Vietnam.

7.     Plaintiff Hòa Thị Đỗ is a citizen and resident of Vietnam.

8.     Plaintiff John Doe 1 is a citizen and resident of Vietnam.

9.     Plaintiff John Doe 2 is a citizen and resident of Vietnam.

10.     Plaintiff John Doe 3 is a citizen of Vietnam and a resident of Thailand.

11.     Plaintiff John Doe 4 is a citizen and resident of Vietnam.

12.     Defendant Formosa U.S.A. is a private for-profit corporation founded in 1978, and incorporated under the laws of Delaware. Its corporate headquarters are located in Livingston, New Jersey, which renders it essentially at home in this state.

13.     Defendant Formosa Plastics is a public for-profit corporation founded in 1954, and incorporated under the laws of Taiwan. Its corporate headquarters are located in Kaohsiung City, Taiwan. It is the alter-ego of Defendant Formosa U.S.A., and/or Defendant Formosa U.S.A. acts as its agent in New Jersey.

14. Defendant Susan Wang is a citizen of the United States and the State of New Jersey. She owns property in New Jersey, resides in Livingston, New Jersey, and is registered to vote there.

## III. JURISDICTION AND VENUE

15. Subject matter jurisdiction exists under 28 U.S.C. § 1332(d)(2), as Plaintiffs are citizens of a foreign state and the Defendants include a citizen of the United States, this case is filed as a class action, and the amount in controversy exceeds $5,000,000.

16. This Court has personal jurisdiction over Defendant Formosa U.S.A. because Defendant maintains its corporate headquarters and principal place of business 9 Peach Tree Hill Road, Livingston, New Jersey, and resides in this district.

17. This Court has personal jurisdiction over Defendant Formosa Plastics because Defendant Formosa U.S.A. is its agent and/or alter ego, and therefore Formosa U.S.A.'s contacts and home may be attributed to Formosa Plastics for jurisdictional purposes.

18. This Court has personal jurisdiction over Defendant Susan Wang because she resides in this district.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants Formosa U.S.A. and Susan Wang reside in this district.

## IV. STATEMENT OF FACTS

### A. General Background & Facts

**1. Plaintiffs' lives and livelihoods in central Vietnam depended on the marine environment.**

20. The steel mill and associated port facilities operated by Formosa Ha Tinh are located in Hà Tĩnh Province, one of the poorest regions in Vietnam. The local population of Hà Tĩnh Province, and nearby Quảng Bình, Quảng Trị, and Thừa Thiên–Huế provinces, is highly

4

reliant on fishing, aquaculture, and related industries that depend on the marine environment.

Plaintiff Hòa Thị Đỗ

21.     Plaintiff Đỗ is the widow of Lê Văn Ngày, a professional diver in Hà Tĩnh Province. Lê Văn Ngày worked for the NIBELC Corporation (International Manpower and Construction), a contractor on the Formosa Ha Tinh port project. He was part of a team of divers laying stone slabs on the seabed within Formosa Ha Tinh's port area in order to reduce the impact of the waves on Formosa Ha Tinh's docks.  In 2016, he had been working for NIBELC doing underwater construction work on the Formosa Ha Tinh project for about a year and a half.

Plaintiff John Doe 1

22.     Plaintiff John Doe 1 runs a fishing business, and is the captain and owner of two fishing vessels. Fishing along the coast of Hà Tĩnh Province has been the tradition of his family for generations and John Doe 1 has worked on the boat since he was very young. In 2012, his father retired and John Doe 1 inherited a boat. His boat has a six-member crew and spends significant time at sea every month, fishing in the area around Hà Tĩnh Province. Prior to April 2016, his business was able to sell approximately 100kg of fish at the market every day.

Plaintiff John Doe 2

23.     Plaintiff John Doe 2, like Lê Văn Ngày, was a professional diver in Hà Tĩnh. He worked for NIBELC on the Formosa Ha Tinh port project alongside Lê Văn Ngày, performing underwater construction.

Plaintiff John Doe 3

24.     Prior to April 2016, Plaintiff John Doe 3 lived in a village in Quảng Bình Province, adjacent to Hà Tĩnh Province. He operated a private mechanical workshop specializing

in repairing fishing boats and cages. He started the business in 2015 and, by 2016, it was very prosperous and successful.

Plaintiff John Doe 4

25.     Plaintiff John Doe 4 runs a business specializing in the importation and selling of fishing nets and fishing gear, melting and casting lead fishing weights, and processing nets for sea and river fishing in Quảng Bình Province. His business has been successful, employing up to 35 employees.

**2.  Defendants created a massive steel mill project.**

26.     The Formosa Plastics Group ("Formosa Group") is a vertically-integrated network of corporations, subsidiaries and affiliates under common family ownership and direction, which together form an integrated corporate enterprise. The Formosa Group itself has no separate corporate personality, but controls multiple corporations under its umbrella, including Defendants Formosa U.S.A. and Formosa Plastics. Defendant Susan Wang has been a top executive in the leadership of the Formosa Group since at least 2006 and is also a director of Defendants Formosa U.S.A. and Formosa Plastics, as well as a director of Formosa Ha Tinh.

27.     In 2008, several Formosa Group entities joined together in a joint venture to create Formosa Ha Tinh in order to carry out a major industrial development in Vietnam, including a steel mill and a deep-water port. According to the Formosa Group, Formosa Ha Tinh was "formed by joint venture from 3 groups of Formosa." This joint venture operated through the Formosa Ha Tinh company, which was created and has at all times been operated for the benefit of the Formosa Group.

28.     Formosa Ha Tinh's steel mill and associated deep-water port is located in the Vung Ang Economic Zone, in Hà Tĩnh Province in central Vietnam. The industrial works cover

approximately 3,318.72 hectares (2,025.37 hectares of land and 1,293.35 hectares of water).

29.     In 2013, Defendant Formosa U.S.A. joined the joint venture controlling Formosa Ha Tinh, and by 2014 became the largest direct owner of shares in Formosa Ha Tinh.

30.     On information and belief, at all relevant times Formosa U.S.A. and/or Formosa Plastics, jointly or separately, managed, operated, and controlled Formosa Ha Tinh, which had no management independent of members of the Formosa Group, and was managed for the benefit of the Formosa Group (including Defendants).

31.     The Formosa Ha Tinh steel mill includes a power plant, blast furnaces, a coking plant, and mills that product hot rolled steel coils and steel wire rods. The coking process is used to convert coal into coke, which is then used to fuel the blast furnaces and plants.

32.     The Formosa Ha Tinh steel mill and associated port is currently the largest foreign direct investment project in Vietnam.

33.     In March and April 2016, Formosa Ha Tinh was in the process of completing and testing major sections of the steel mill.

**3.  Toxic waste discharge from the steel mill in 2016 caused environmental devastation.**

34.     No later than April 6, 2016, dead marine life (including fish, shrimp, prawns, and oysters) began showing up in four provinces in central Vietnam. Tons of dead fish – both farmed fish and deep sea fish – washed up on the beaches. The die-off started in Hà Tĩnh Province and, approximately ten days later, began appearing the neighboring provinces of Quảng Bình, Thừa Thiên–Huế, and Quảng Trị, ultimately affecting approximately 120 miles of coastline. The die-off appeared to abate for a few days around April 20th through 23rd, but resumed around April 24th and continued until around May 8th.  During this time period, witnesses reported abnormal phenomena in the water along the coast, including streaks of discolored and darkened water

stretching for meters or even kilometers.

35.     On April 26, 2016, the Formosa Group issued a statement indicating that wastewater from the Formosa Ha Tinh steel mill is released directly into the ocean, but that the wastewater is treated and that they had no evidence that the fish deaths were related to the Formosa Group.

36.     Many people who consumed seafood during this period became ill. On April 27, 2016, three weeks into the toxic waste disaster, the Prime Minister issued a statement forbidding the public from consuming, collecting, or selling dead fish and other seafood due to pollution.

37.     At that point, officials from the Vietnamese government held a press conferences but did not assign a definite cause for the massive fish kill. They indicated that the disaster could be due to a discharge of toxic waste, or could have been caused by an algal bloom (red tide), and that they had not found any connection between Formosa Ha Tinh's activity and the disaster.

38.     On April 28, 2016, the Formosa Group echoed the Vietnamese government's statement that they had not discovered evidence of a connection to Formosa Ha Tinh, and likewise suggested that the fish deaths could be due to natural causes such as an algal bloom.

39.     In June 2016, the Quảng Bình provincial government released test results of samples of seafood taken from the coast concluding that the seafood was not safe for human consumption due to the excess amount of heavy metals in the polluted seafood.

40.     In response to the disaster, the government of Vietnam created a task force, the National Council of Scientific and Technological Experts, to investigate the causes of the massive marine life die-off. The task force included experts from the Ministry of Natural Resources and Environment, the Ministry of Science and Technology, and the Vietnam Academy of Science and Technology, as well as international experts.

41.     On June 30, 2016, the government of Vietnam held a press conference, announcing that Formosa Ha Tinh was responsible for the toxic release which lead to the massive fish kill. The government noted that Formosa Ha Tinh had released wastewater into the sea containing excessive levels of toxic chemicals including phenol, cyanide, and iron hydroxide during a test run of the steel mill.

42.     In July 2016, the Minister of Natural Resources and Environment presented a report on the expert task force's findings to the Vietnam National Assembly. The report reiterated the experts' conclusions that there was a large source of waste from the area of the Vung Ang Economic Zone which caused the massive death of marine life. The waste contained a mixture of colloidal particles such as phenol and cyanide, heavy metals, and polycyclic aromatic hydrocarbons, as well as iron hydroxide. After analyzing several possible sources of wastewater into the marine environment in the area of the Vung Ang Economic Zone, the experts agreed that the *sole* possible source of the pollution containing the toxic chemicals such as phenol and cyanide was Formosa Ha Tinh.

43.     On June 30, 2016, the Formosa Group itself also issued a statement accepting the government's findings, admitting responsibility, and blaming the pollution on a subcontractor's oversight during a test run of the steel mill. The statement, purportedly issued in the name of Formosa Ha Tinh, was published on the Formosa Group's website, www.fpg.com.tw.

44.     Formosa Ha Tinh also apologized for the toxic waste disaster, stating: "Our company takes full responsibility and sincerely apologizes to the Vietnamese people . . . for causing the environmental disaster which seriously affected the livelihood, production and jobs of the people and the sea environment."

45.     However, prior to the public statements from the Formosa Group and the

government of Vietnam on June 30th, Formosa Ha Tinh wrote privately to the Vietnamese

government on June 18, 2016, admitting responsibility for the incident. In that letter, they

admitted that the cause of the massive fish kill was the discharge of wastewater into the sea from

their steel mill. They stated further that a power cut at the beginning of April 2016 which lasted

several days left their management unable to control the quality of the wastewater. In the letter,

Formosa Ha Tinh apologized on behalf of the Formosa Plastics Group. The letter was not public

at the time.

46.     The toxic waste disaster devastated the local ecology and economy and caused

substantial health impacts.

47.     According to the July 2016 report issued by the Minister of Natural Resources

and Environment and presented to the Vietnam National Assembly, the toxic waste disaster

resulted in the death of over 100 tons of marine wildlife that washed ashore (approximately 15

tons in Hà Tĩnh Province and 100 tons in Quảng Bình Province), in addition to the uncounted

tons of marine life that sank to the sea floor. Fisheries had a reduced output of 1,600 tons per

month. The massive die off of marine life affected the activities 17,682 fishing boats, harming

40,966 people directly, as well as their 176,285 dependents. Beyond 20 nautical miles of the

shore only 50% to 70% of fishing boats were able to operate, and within 20 nautical miles of the

shore 90% of motorized boats and 3,964 non-motorized boats could not operate. The pollution

destroyed 5.7 hectares of prawn farms (including 9 million breeding prawns and 7 tons of prawns

for harvest); killed the fish in 16,313 fish cages (approximately 140 tons of fish); killed 6.7

hectares of farmed clams, or 67 tons of clams; and killed 10 hectares of farmed crabs.

48.     The consumption of seafood was drastically reduced in the most affected

provinces and the price of sea products captured outside of 20 nautical miles from the affected

areas dropped 30-50% compared to 2015, while the sea products caught within the 20 nautical mile zone were simply unsaleable.

49.     In the fishing industry and related industries, including fish processing, fishing gear, and seafood trading, at least 19,500 people suffered loss of income.

50.     The government's report also noted significant decreases in the tourism industry in response to the disaster. In the four affected provinces, 50% of tourists planning to come to the area cancelled their trips and hotel occupancy decreased by 40-50% compared to 2015.

51.     The fishing industry in central Vietnam was forced to come to a complete standstill, for several reasons. The massive fish die-off first reduced the fish available to catch. Then, the governmental prohibition on the sale and consumption of fish, coupled with the public's justifiable fear of eating contaminated fish, destroyed the market for fish and other seafood.

52.     Overall, including fishing, tourism, and other impacts, the Vietnam Ministry of Labor estimated that 263,000 workers were affected by the disaster, including 40,000 workers in the four provinces in central Vietnam most directly affected.

53.     The communities along the coast of central Vietnam rely heavily on the fish from rivers and ocean as a staple food. Many people ate contaminated seafood, and swam or otherwise had contact with contaminated seawater, before they knew of the dangers of the toxic waste discharge. Many suffered illness from the contamination.

54.     Even after the toxic waste discharge was known, many families had little choice but to continue eating the contaminated fish, because they had no other means of surviving. Without income from fishing, they also could not afford to buy uncontaminated food.

55.     With a massive fish kill of this nature, the ecosystem and its biodiversity are threatened due to disruptions in the food chain, harming coral reefs and plankton in addition to fish. The preliminary study conducted by the governmental task force already showed significant biodiversity loss by July 2016 (50% species loss), with reduced spawning by certain species (losses of approximately 20-50%), 450 hectares of coral reefs affected, and the destruction of 40-60% of coral reefs at the sites surveyed. Additionally, the density and mass of ocean floor-dwelling animals from Hà Tĩnh Province to the Hải Vân and Sơn Trà Peninsulas was greatly reduced.

56.     This reduction in biodiversity further threatens the fishing industry – as well as all associated industries, and the tourism industry – over the long term.

### B. Plaintiffs Were Injured by the Formosa Toxic Waste Disaster.

57.     Each Plaintiff suffered significant injuries from the toxic waste disaster.

<u>Hòa Thi Đỗ</u>

58.     Starting in early April 2016, Plaintiff Đỗ's husband, Lê Văn Ngày, began experiencing allergic reactions all over his body after diving in the polluted water. On or around April 16, 2016, divers in his group working at the port saw black and yellow discoloration in the water and a large amount of dead fish. On or around April 23, 2016, Lê Văn Ngày and several other divers experienced symptoms such as tightness in their chests, unstable blood pressure, coughing, itching skin, headaches, and difficulty seeing, among others. They were required to continue their work on the Formosa Ha Tinh port despite these symptoms. Then on April 24, 2016, Lê Văn Ngày went to the company dormitory to rest and experienced more of the same symptoms. He died at approximately 4pm that day.

59.     Prior to this incident, Lê Văn Ngày was in good health. On March 24, 2016, he had a health checkup at Yan-Ning General Hospital. The report from this checkup showed that no abnormal symptoms were found in his circulatory system, respiratory system, digestive system, kidney and urinary function, muscle-motor system, nervous system, mental system, blood, urine, and lungs.

60.     Plaintiff Đỗ has struggled to get information about the death of her husband. Despite repeated requests to the local and national authorities in Vietnam, the police never released the autopsy to the family.

61.     The family – Ms. Đỗ and her two children – has suffered significantly economically as Lê Văn Ngày was the sole breadwinner for the family. After her husband's death, she was forced to take out a loan from the bank to replace the income lost and is now dependent on social assistance. Plaintiff Đỗ also continues to suffer from emotional trauma associated with the death of her husband.

John Doe 1

62.     Plaintiff John Doe 1's fishing business suffered drastically after April 2016. Directly after the environmental disaster, he had to destroy his catch because no one would buy the polluted fish out of fear of getting ill from the polluted fish. He stopped going out to sea for an entire year after the disaster.

63.     John Doe 1 owns two boats, and had to drydock one of them after the disaster. He has to take out loans to even maintain his business, but the bank said he could only get a loan if he changed professions.

64.     The industry has recovered slowly, but as of 2018 John Doe 1's fishing business has only gotten back to about 50% of its previous level.

65.     John Doe 1 and his family also at fish that he had caught before knowing that there was toxic pollution in the water. Once the government issued the results of their investigation into the pollution, they stopped eating seafood immediately.

John Doe 2

66.     In April 2016, Plaintiff John Doe 2 experienced similar symptoms as Lê Văn Ngày after exposure to the water while diving on the Formosa Ha Tinh port project. These symptoms included tightness in his chests, unstable blood pressure, coughing, itching skin, headaches, and difficulty seeing. Since the incident, he sometimes still has difficulty breathing.

67.     Due to these health issues and the general toxicity in the polluted coastline, John Doe 2 could not work for 8 months following the disaster.

68.     After the death of Lê Văn Ngày, John Doe 2 and the other divers requested health examinations from NIBELC. NIBELC arranged for them to go to Hue Central Hospital. Despite requests to see the results of those examinations, the company has refused to give them those reports.   Additionally, he ate fish from the sea before realizing that the fish were polluted.

69.     John Doe 2 has suffered health problems and mental anguish from exposure to the toxic chemicals in the water and his loss of work stemming from the disaster.

John Doe 3

70.     Plaintiff John Doe 3 was forced to close his business at the end of 2016 due to the environmental disaster. As people could not eat seafood fished from the ocean and fishing families (those who fished from boats and those who used cage farming) could not sell anything they caught, no one had money to repair or remodel boats or rafts. The lack of demand for his once-thriving business forced its closure by the end of 2016.

71.     John Doe 3 also suffered poisoning from eating polluted fish. After April 2016

(approximately August and October) he experienced difficulty breathing, dizziness, and diarrhea. He was treated in Quảng Bình Province by two different doctors.

72.     When John Doe 3 demanded accountability and compensation from Formosa, he was beaten and the Vietnamese government sought to arrest him. He fled the country and is currently living in Thailand as a refugee.

John Doe 4

73.     Plaintiff John Doe 4's business suffered immediately after the April 2016 environmental disaster. Due to the devastation of the fishing industry, there were no customers to purchase nets or lead. He was forced to reduce the productivity of his company, which lost 80% of its income.

74.     When people began to catch and consume fish again in 2017, he was able to sell nets again. However, he has had to shut down his lead furnace because of the reduced fishing activities, meaning his business is operating at 50% compared to before April 2016.

75.     John Doe 4 has been forced to take out a loan with very high interest rates to support his children's education and keep his business from bankruptcy.

76.     John Doe 4 a small amount of compensation form the government, but this was insufficient to cover his economic losses.

77.     John Doe 4 has also suffered mental anguish from the incident and the devastation to his business.

### C.  Plaintiffs' Injuries Have Not Been Remedied.

78.     After negotiations between the Vietnamese government and the top executives of the Formosa Group, including Defendant Susan Wang, Formosa Ha Tinh signed an agreement with the government of Vietnam admitting its responsibility for the toxic waste disaster,

promising to pay compensation for the victims of the disaster and to take steps in coordination with the government of Vietnam to ensure that environmental disasters caused by Formosa Ha Tinh's activities will not recur.

79.     Formosa Ha Tinh pledged to pay $500 million to the government to assist with recovery of the environment and economy, as well as providing compensation to victims, and apparently did pay this money.

80.     Nonetheless, this payment did not adequately remedy the harms the disaster caused to Plaintiffs and the Plaintiff Class. Many injured individual and families received no compensation at all, and those who did receive compensation were not made whole by that compensation, because it was insufficient to repay their losses.

81.     The Formosa Group (including all Defendants) did not make payments or come to any agreements directly with the Plaintiffs or other injured parties.

### D.  Defendants Are Responsible for the Toxic Waste Disaster.

82.     Defendants here are liable because, among other things, Defendants Formosa U.S.A. and Formosa Plastics form an integrated enterprise with Formosa Ha Tinh; because Defendants Formosa U.S.A. and Formosa Plastics engaged in a joint venture to dominate and control Formosa Ha Tinh, which acted as their agent; and because all Defendants, including Susan Wang, participated in decisionmaking that caused the toxic waste disaster.

**1.  The toxic waste disaster resulted from high-level decisions to use substandard technology and failures to ensure that the steel mill was properly constructed and operated.**

83.     The Formosa Ha Tinh Steel Corporation has fully admitted responsibility for the toxic waste disaster, which has been confirmed by investigations of the government of Vietnam.

84.     Even without this admission, however, the available evidence amply shows the

responsibility of Formosa Ha Tinh – and those who exercised decision-making authority over the Formosa Ha Tinh steel project, including Defendants.

85.     On information and belief, the toxic discharge from Formosa Ha Tinh was caused by inattention to environmental controls, lax standards, and a rush to open the steel mill on time without taking adequate safety precautions.

86.     From the beginning of the project, environmental protection was not a priority for the Formosa Group (including Defendants).

87.     The Formosa Group originally intended to build its steel mill in Taiwan. In 2004, the Group set up a new corporation in Taiwan for this purpose, and applied to construct the project. However, the Formosa Group suspended the project in 2007 after Taiwan's Environmental Protection Agency's Review Committee met for its 160th review of Formosa's environmental impact assessment and determined that the proposed steel mill still had to go through a second stage of environmental impact assessment.

88.     Given the inability to satisfy the apparently more stringent environmental regulations in Taiwan, the Formosa Group moved the steel mill project to Vietnam. In 2014, C.T. Lee – the Chairman of Formosa U.S.A., who is also a director of both Formosa Plastics and Formosa Ha Tinh – stated that the decision to build the steel mill in Vietnam was in fact driven by the lack of carbon emission restrictions in Vietnam. Defendants were aware that the manner in which they intended to construct and operate the facility presented a danger to the environment and the people who resided and worked in the area.

89.     The Formosa Ha Tinh steel mill was originally scheduled to open in March 2016, but in 2014, riots against Chinese- and Taiwanese-owned companies, including Formosa Ha Tinh, delayed progress on the project.

90.     The steel mill was subsequently rushed to completion, with inadequate supervision of construction.

91.     Metallurgical Corporation of China Ltd. (MCC) was hired as a contractor to help complete the project. In May 2015, MCC issued a public statement on this contract, emphasizing its rapid progress and expectation of finishing on time: "MCC can confidently assure FPG [Formosa Plastics Group] that the main work of the Ha Tinh Steel Project will be completed prior to October of this year and the plant will be operational in early March of next year."

92.     Public statements also emphasized that the Formosa Group needed to complete the project by the March 2016 target, and MCC pledged to do so. MCC publicly states its commitment to "never delaying."

93.     By March 2016, however, there were clear signs that the steel mill's construction process had been problematic. That month, MCC released a statement noting "major problems in the application of Chinese standards in the Formosa Plastics Group's Ha Tinh Blast Furnace Project in Vietnam."

94.     Nonetheless, the project continued without pause. On April 5th, 2016, MCC put out a statement saying that the steel mill had successfully produced products for the first time. The next day dead fish began appearing.

95.     The Vietnamese Minister of Resources and Environment reported in July 2016 that Formosa Ha Tinh had committed 53 violations of environmental protection and water pollution regulations, including violating requirements in the government-approved environmental impact assessment to use certain methods for bio-waste water treatment.

96.     In particular, in contravention of its agreement with the Vietnamese government, the steel mill was using a wet coking system instead of a less-polluting dry coking process. Wet

coking is less expensive, but creates more wastewater laden with toxic chemicals such as cyanide, phenol, and heavy metals. On information and belief, the decision to use this system contributed to the toxic waste disaster, but it was not the only cause.

97.     Another government official noted that "[v]iolations in the construction and testing operations of the plant are the causes for serious environment pollution killing a massive amount of fish."

98.     The steel mill was not adequately designed or constructed to filter wastewater. The mill's wastewater was designed to discharge through pipes directly into the ocean. The discharge of toxic waste through these pipes was the immediate cause of the disaster.

99.     Several days before the fish deaths began, a diver and fishermen discovered an underwater pipeline from the Formosa Ha Tinh steel mill that was leaking dark-yellow liquid.

100.     Thus the Formosa Ha Tinh steel mill was inadequately designed, constructed, supervised and operated, causing the toxic waste discharge. As set forth below, each Defendant is responsible for these flaws in the construction and operation of the steel mill.

**2.   The history of the Formosa Group, including Formosa Ha Tinh, as an integrated enterprise.**

101.     The Formosa Group, which formed the joint venture that created and controlled Formosa Ha Tinh for its benefit, is a vertically-integrated conglomerate made up primarily of Formosa Plastics, Nan Ya Plastics Corporation, Formosa Chemicals and Fibre Corporation, and Formosa Petrochemical Corporation. These companies are incorporated and based in Taiwan.

102.     Formosa Plastics was founded in 1954 to produce PVC resin. It was founded by Wang Yung-Ching ("Y.C. Wang"), along with his brother Wang Yung-Tsai ("Y.T. Wang").

103.     The Wang brothers went on to found several more corporations in related industries that were also owned and controlled by the Wang family.

104.    The Wang family created the Formosa Group, an unincorporated association directed by the Wang family that controls and manages all of the Group to benefit the overall family-held enterprise.

105.    In 1958, 1965, and 1992, among other years, the Formosa Group added additional companies that were part of the Group's vertical integration strategy in order to fulfill the role of all of the stages of production. Using this model, the various companies within the Group were founded to be the supply and demand for each other.

106.    The various Formosa corporations based in Taiwan have the same principal place of business, No. 201 Dunhua North Road, Taipei City, Taiwan.

107.    At relevant times, the Wang children, Susan Wang and Ruey-Yu "Sandy" Wang (daughters of Y.C. Wang) and Wen-Yuan "William" Wong[2] and Wen-Tsai (or Whenchao) "Wilfred" Wang (sons of Y.T. Wang) exercised day-to-day control over the Formosa Group as members of the Executive Board, which controlled the Formosa Group from 2006 through 2017. The Executive Board was responsible for high-level decisionmaking for all Formosa Group entities.

108.    Administratively, control of the Group is accomplished through the Group Administration Office. By 2008, the Group Administration Office employed over 100 advisors for the purpose of coordinating the activities of the various corporations under the Formosa Group. According to the Formosa Group, the Office "was set up to coordinate resources and perform the cooperative function in the Group. In addition to pursuing management implementation and improvement, the Office is also in charge of group-wide strategy,

---

[2] The last name of the family (Wang) can be spelled either Wang or Wong when written in English, depending on personal preference.

computerized management systems, business auditing, material procurement, financing, engineering construction, legal affairs and public relations." It is responsible for the day-to-day operations of the Group.

109.    The Group Administration Office also oversees project construction and safety, health, and environment management.

110.    Because the Formosa Group itself is not an incorporated entity, it is not clear who employs the staff of the Group Administration Office. On information and belief, these staff are employed by Formosa Plastics, as the "flagship" company within the Formosa Group.

111.    Although it apparently has no separate legal personality, the Formosa Group also produces an annual report and hosts a website.  On information and belief, this is accomplished through staff and resources of the companies of the Formosa Group. For example, the website of the Formosa Group is registered to Nan Ya Plastics Corporation, even though Nan Ya is only one of the four principal Formosa Group companies.

112.    In addition to management and day-to-day control, the Formosa Group exercises centralized control over other issues among its companies. The Formosa Group has a Safety, Health & Environment Center "to monitor and control the air, wastewater, waste articles, noise and ecological environment conditions" of its companies.

113.    The Formosa Group's central decision-making includes locating and developing its various international projects, including those within the United States. Again, these decisions are not made at the level of individual corporations, but to benefit the overall enterprise.

114.    The business model of the Formosa Group is to do "extensive evaluation" into its potential investment projects around the globe. The Formosa Group establishes a project team to evaluate each project and plans out the stages of the project.

115.    The Wang family controlled the Executive Board of the Formosa Group directly until a restructuring in approximately June 2017. At that point, the Executive Board was split into two branches: the Administrative Center, comprising the chairs of the four top-level Formosa Group corporations as well as the chair of Formosa Ha Tinh; and the Management Center, comprising the four Wang family members (Susan Wang, William Wong, Sandy Wang, and Wilfred Wang).

116.    The Formosa Group's press release about the restructuring indicated that the Wang family members in the Management Center would oversee all corporations' operations. The Management Center is "responsible for supervising business operations."

117.    Thus, following the restructuring, the Formosa Group remains a highly integrated enterprise with central decision-making.

118.    Numerous statements and actions demonstrate that Formosa Ha Tinh was and is part of this integrated enterprise, centrally managed by the Formosa Group for its benefit.

119.    Formosa Group officials hired MCC as the primary contractor on the Formosa Ha Tinh project, and it is the Formosa Group that has made numerous decisions regarding the ownership structure of Formosa Ha Tinh, which has shifted several times over the years. MCC's public statements indicate that, in 2015, its Chairman met with the President and Vice-President of the Formosa Plastics Group in Vietnam to discuss the progress of the Formosa Ha Tinh steel mill project.

120.    The Formosa Group itself has made numerous public statements about the Formosa Ha Tinh project, including the statements noted above initially denying, and then accepting, responsibility for the toxic waste disaster.

121.    These statements continued following the disaster. On November 28, 2017, the

22

Formosa Group issued a statement regarding the safety of the wastewater treatment system at Formosa Ha Tinh.

122.    On May 27, 2018, the Formosa Group issued a statement noting that William Wong would be present for the test run of the second blast furnace at the Formosa Ha Tinh steel mill, and another statement on July 22, 2018, confirmed that William Wong was present to inspect the start of the second furnace.

123.    The Formosa Group therefore controlled Formosa Ha Tinh as part of an integrated enterprise, for the benefit of the Formosa Group, including Defendants Formosa Plastics and Formosa U.S.A.

124.    All members of this integrated enterprise – including Defendants Formosa Plastics and Formosa U.S.A. as well as Formosa Ha Tinh – are therefore jointly liable for the acts of their agents, and jointly liable for the Formosa toxic waste disaster.

**3.    Defendants Formosa Plastics and Formosa U.S.A. control Formosa Ha Tinh through a joint venture.**

125.    In addition to being an integrated single enterprise, various Formosa Group entities – including Defendants Plastics and Formosa U.S.A. – have controlled and still control Formosa Ha Tinh through a joint venture.

126.    The Formosa Group itself has acknowledged that Formosa Ha Tinh was created by a joint venture of Formosa Group companies. At all relevant times, that joint venture included Defendants Formosa Plastics and Formosa U.S.A. This joint venture exercises direct control over Formosa Ha Tinh, and directs its activities.

127.    Formosa Ha Tinh has always been dominated by Formosa Group companies, which have owned between 100% and 70% of Formosa Ha Tinh over time, and currently own about 75% of Formosa Ha Tinh. At most times, Formosa U.S.A. has been the largest Formosa

Group shareholder in Formosa Ha Tinh.

128.    Formosa U.S.A. became a shareholder of Formosa Ha Tinh on November 14,
2013. As of February 2014, Formosa U.S.A. was the largest Formosa Group shareholder in
Formosa Ha Tinh.

129.    Although non-Formosa Group shareholders hold a minority ownership stake in
Formosa Ha Tinh, the Formosa Group – principally through Formosa Plastics and Formosa
U.S.A. – has continued to control Formosa Ha Tinh. All principal decisions regarding Formosa
Ha Tinh, from the hiring of MCC to the payment of compensation to the Vietnamese
government, were made by the Formosa Group.

130.    In 2014, the Formosa Group created an additional holding company, Formosa Ha
Tinh (Cayman) Limited, as a layer between the Formosa Group joint venture companies and
Formosa Ha Tinh. The decision to create this company as the formal vehicle for shareholding in
Formosa Ha Tinh was made by the Formosa Group in a centralized manner.

131.    The creation of this holding company did not change the management or control
of Formosa Ha Tinh. Instead, on April 20, 2015, the Formosa Group companies' percentage
holdings in Formosa Ha Tinh were simply transferred to Formosa Ha Tinh (Cayman) Limited,
which became the sole shareholder of Formosa Ha Tinh. On information and belief, this was not
an arm's length transaction, but simply a mechanism by which the joint venture altered the
formal shareholding structure.

132.    The Formosa Group increased its ownership of Formosa Ha Tinh in March 2018,
with an increase in capital to the project. The Formosa Group's overall ownership rose to
75.45% while China Steel and JFE's shares fell to 20.46% and 4.09% respectively. Formosa
U.S.A.'s shares rose from 11% to 14.23%.

133.    Control by the Formosa Group has been exercised partly through shared management. In addition to its substantial capital contribution, the directors and managers of Formosa U.S.A. – mostly shared with Formosa Plastics – were highly involved in the development and construction of the port and steel mill. On information and belief, these executives operated Formosa Ha Tinh for the benefit the Formosa Group.

134.    William Wong was appointed Chairman of Formosa Ha Tinh on June 12, 2008, and currently serves on Formosa Ha Tinh's Board of Directors. William Wong is the Executive Director of Formosa Plastics, and also serves on the board of Formosa U.S.A. He served the board of directors of Formosa U.S.A. in 2013 (the year that Formosa U.S.A. joined the joint venture controlling Formosa Ha Tinh) and in 2016 (the year of the disaster).

135.    Susan Wang serves on the boards of Formosa Ha Tinh, Formosa U.S.A. and Formosa Plastics. In 2016, Susan Wang was the Managing Director of Formosa Plastics, and a director of Defendant Formosa U.S.A. She also served as a director of Formosa U.S.A. in 2013 when Formosa U.S.A. joined the joint venture controlling Formosa Ha Tinh.

136.    C.T. Lee (Lee Chih-Tsuen or Lee Chu-Tsung), the current Chairman of Formosa U.S.A., is also a director of Formosa Plastics and Formosa Ha Tinh, positions that he also held in 2016. In 2016 he was also considered "Top Advisor" at Formosa Plastics. He also served as a director of Formosa U.S.A. in 2013 when Formosa U.S.A. joined the joint venture controlling Formosa Ha Tinh.

137.    "Jason" Jaing-Nan Lin, the President of Formosa U.S.A. and also on the Board of Directors, is the Chairman and President of Formosa Plastics Corporation; he held all these positions in 2016 as well. Jason Lin also serves on the Board of Directors of Formosa Ha Tinh. He also served as a director of Formosa U.S.A. in 2013 when Formosa U.S.A. joined the joint

venture controlling Formosa Ha Tinh.

138.     These key individuals participated directly in significant decisions for Formosa

Ha Tinh.

139.     In 2009, when China Steel Corporation became interesting in investing in the

project, William Wong and C.T. Lee were part of the delegation from the Formosa Group that

collaborated with China Steel on the project in Vietnam.

140.     In 2010, at the beginning of the project, C.T. Lee was involved in acquiring more

land for the steel project in Vietnam.

141.     Additionally, in 2012 and 2015, William Wong visited Vietnam and the Ha Tinh

project in order to co-chair ceremonies of construction launches and completion.

142.     The Formosa Ha Tinh project was suffering delays and damage in 2014 after riots

against Chinese- and Taiwanese-owned companies, including Formosa, broke out in Vietnam. At

that point, William Wang and other officials from the Formosa Group visited Vietnam to manage

the situation. The riots caused approximately $3 million worth of damage to Formosa's property

in Vietnam and caused construction to come to a halt.

143.     Susan Wang and William Wong led the 2015 meeting with MCC, engaging MCC

as the primary contractor to finish the project.

144.     William Wong and Susan Wang also met with the Chairman of CISDI, an affiliate

of MCC which describes itself as "the master designer, general consultant and the uppermost

construction service provider of FHS." They met as the second blast furnace was imminently

coming online in order to discuss the continued role of CISDI in the FHS project.

145.     Executives of these parent companies – Defendant Formosa Plastics and

Defendant Formosa U.S.A. – thus directly controlled major decisions for the Formosa Ha Tinh

26

project, as participants in the joint venture of Formosa Group companies.

146.    This exercise of control is consistent with the general approach of these corporations. For example, Formosa U.S.A. exercises a high degree of control over its U.S. subsidiaries. In particular, it is in the practice of providing environmental support to its subsidiaries, including trainings on federal regulations. In addition, it approves the budget of at least one subsidiary. On information and belief, it exercised a similar degree of control and direction to Formosa Ha Tinh.

147.    Formosa Plastics, for its part, appears to have exercised direct control over engineering and construction of the Formosa Ha Tinh project. Within the Engineering and Construction Division at Formosa Plastics – which among other things specifically does project planning, and design and manufacturing – there is a unit specifically called the Ha Tinh Steel Engineering Unit. On information and belief, this is the department that directly oversees the Formosa Ha Tinh steel project.

**4. Defendant Susan Wang personally participated in causing the toxic waste disaster.**

148.    As noted above, in addition to her significant roles with the Formosa Group, Defendant Formosa Plastics, and Defendant Formosa U.S.A., Defendant Susan Wang personally participated in the decisions that led to the toxic waste disaster, and personally supervised the Formosa Ha Tinh steel project.

149.    In her current role in the Formosa Group Management Center, Susan Wang is charged with ensuring the performance of all Formosa Group entities, including Formosa Ha Tinh.

150.    These positions gave Susan Wang direct oversight of the Formosa Ha Tinh steel project.

151.    For example, Susan Wang, along with William Wong, led the 2015 meeting with a MCC. Susan Wang herself signed the memorandum of understanding with MCC to complete the construction of the steel mill.

152.    Susan Wang's direct role is also demonstrated by her participation in negotiations following the toxic waste disaster. Susan Wang traveled to Vietnam along with William Wong in June 2016 to negotiate with the Vietnamese prime minister.

153.    This trip was so important that Susan Wang and William Wong were absent from a Formosa Plastics Group shareholders' meeting and board meeting held on June 17, 2016, a highly unusual occurrence.

154.    As noted above, Susan Wang personally traveled to Vietnam and negotiated the payment from the Formosa Group to the Vietnamese government.

155.    Thus, Susan Wang is personally responsible for her direct role in the Formosa Ha Tinh steel project and toxic waste disaster.

    **5.  Environmental pollution continues at the Formosa Ha Tinh steel mill.**

156.    When Formosa Ha Tinh's second blast furnace started production in 2018, William Wong gave assurances to the public that the Formosa Group would ensure that the environment would be protected while it operated the steel mill.

157.    Despite this promise, the Formosa Ha Tinh steel mill has continued to release toxins into the environment and violate environmental laws and regulations in Vietnam. Defendants are still failing to ensure that their project operates properly and that toxic waste is minimized and disposed of properly.

158.    Defendants also have only now (if at all) finished the conversation from the polluting wet coking system, one of the contributing factors to the toxic waste disaster.

Conversion from wet to dry coking was set to be completed in June 2019.

159.    In 2017, Formosa Ha Tinh was cited by the Vietnamese government for illegally burying toxic waste containing cyanide on farmland near the steel mill. It paid a $25,000 fine.

160.    The Hà Tĩnh Provincial government also recently raised concerns with Formosa Ha Tinh's disposal system for solid waste, such as mud and slag discharged from the blast furnaces. The government noted the lack of transparency and objectivity in the process of determining the level of toxicity in the solid waste, and therefore, the government was unable to verify that the solid waste is being properly disposed of, recycled, or stored.

## V.    ADDITIONAL ALLEGATIONS RELEVANT TO LEGAL ISSUES

### A.  Personal Jurisdiction is Proper Over Formosa Plastics Corporation.

161.    Personal jurisdiction over Formosa Plastics Corporation is proper because, at least for jurisdictional purposes, it is the alter-ego of Formosa Plastics Corporation, U.S.A.

162.    Formosa U.S.A., a subsidiary of Formosa Plastics, was founded by Formosa Plastics in 1978 as a vertically-integrated supplier of plastics and petrochemicals. Formosa U.S.A. states that it is an "affiliate" of the Formosa Group.

163.    Formosa U.S.A. is a direct arm of the Formosa Group; as the Formosa Group itself has no corporate personality, Formosa U.S.A. operates the alter-ego of the flagship company, Formosa Plastics. Both companies are also part of the overall integrated enterprise that is the Formosa Group.

164.    Formosa Group's own publications discusses *their* investments in the United States *"[t]o further vertically integrate [their] production"* and the "large petrochemical plants, secondary and tertiary processing plants, and natural gas production wells" that *the Group owns* throughout the United States.

165.    Formosa Plastics exercises significant control over Formosa U.S.A. – beyond the level of control they could exercise through their shareholding. In fact, Formosa Plastics is the minority shareholder of Formosa U.S.A., owning only 22.61% of its shares as of 2016. Other Formosa Group entities held small amounts of Formosa U.S.A. stock in 2016; Formosa Chemicals and Fibre Corporation owned 2.92% and Nan Ya Plastics Corporation owned 0.51%. Nonetheless, the Formosa Group, through Formosa Plastics, exercises complete control over Formosa U.S.A., disregarding the ordinary corporate formalities.

166.    According to the Formosa Group, "Formosa Plastics' operations in the United States are conducted principally through FPC U.S.A . . . . Formosa Plastics' manufacturing plants overseas also report regularly to their corresponding divisions in the ROC [Taiwan] and adhere to similar management principles and production techniques adopted by Formosa Plastics' manufacturing plants in the ROC. Management staff from Formosa Plastics' Taiwanese headquarters are seconded to these subsidiaries and joint ventures to assist the operation of Formosa Plastics' manufacturing plants overseas."

167.    Thus, Formosa Plastics directly assigns staff to Formosa U.S.A., exercising direct control over this entity.

168.    The Formosa Group encompasses several U.S. corporations, some of which are direct subsidiaries of Formosa U.S.A. The Formosa Group, principally through Formosa Plastics, directly controls all subsidiaries in the United States. For example, Formosa Plastics Corporation, Texas, which is a wholly-owned subsidiary of Formosa U.S.A., describes itself as "a wholly-owned subsidiary of Formosa Plastics Group, Taiwan."

169.    The Formosa Group reports revenue from Formosa U.S.A., and lists Formosa U.S.A.'s New Jersey address on its annual reports.

170.    On Formosa Ha Tinh's Investment Certificate from February 2014, Formosa Plastics Corporation and Formosa U.S.A. listed the same Taiwan address.

171.    Formosa U.S.A. and Formosa Plastics are also alter egos because they are under joint control of the same Wang family members. As noted above, the four Wang family members – William Wong, Susan Wang, Sandy Wang, and Wilfred Wang – control the Formosa Group, including these two companies, through their roles in the Management Center.

172.    These same four family members also directly control the majority of Formosa U.S.A.'s stock.

173.    Approximately 75% of Formosa U.S.A.'s stock is held in trust by the New Mighty U.S. Trust. New Mighty U.S. Trust was created on or around May 3, 2005 by trustee Clearbridge LLC under the laws of Washington, D.C. The Declaration of Trust states New Mighty U.S. Trust "is designed to hold, manage and administer interests in Formosa Plastics Corporation, U.S.A. ('FPC-USA'), and any other member of the Formosa Plastics Group of companies for the benefit of one or more of such charities, philanthropic organizations, and Grantors as the Trustees determine to benefit from time to time, pursuant to the Founders' Vision for the betterment of mankind."

174.    The Declaration of the Trust allows the trustee to irrevocably assign "general management and investment powers to others who are not Trustees, to the full extent permissible by law." In 2005, William Wong, Wilfred Wang, Susan Wang, Sandy Wang, and Wen Hsiung Hung became the Trust Managers of the Trust. Wen Hsiung Hung died in 2015, such that as of 2016, management of the Trust was in the hands of the same four Wang family members who controlled the management of the Formosa Group.

175.    Again, despite the fact that Formosa Plastics controls only a minority of Formosa

U.S.A's stock, all of Formosa U.S.A.'s principal executives are directly affiliated with Formosa Plastics.

176.    Defendant Susan Wang in particular, a top executive at Formosa Plastics, has done business in New Jersey on behalf of Formosa Plastics.

177.    From at least 2014 through 2018, the Board of Directors of Formosa U.S.A. included Susan Wang and William Wong, who also hold significant positions with Formosa Plastics; Susan Wang is currently Managing Director of Formosa Plastics, and William Wong, is currently the Executive Director of Formosa Plastics.

178.    "Jason" Jaing-Nan Lin, the President of Formosa U.S.A. and also on the Board of Directors, is the Chairman and President of Formosa Plastics Corporation; he held all these positions in 2016 as well.

179.    C.T. Lee (Lee Chih-Tsuen or Lee Chu-Tsung), the current Chairman of Formosa U.S.A., is also a director of Formosa Plastics, positions that he also held in 2016. In 2016 he was also considered "Top Advisor" at Formosa Plastics.

180.    C.J. Wu, the current Chief Executive Officer of Formosa U.S.A, is also a Director of Formosa Plastics, a position he has held since 2012.

181.    The Formosa Group also directly controls the operations of the Group's other subsidiaries throughout the United States. In various configurations, William Wong, Susan Wang, Jason Lin, and C.T. Lee are and have been since before April 2016, on almost all of the boards of Formosa U.S.A.'s and the Formosa Group's subsidiaries in the U.S. including: Formosa Hydrocarbon; Formosa Industries Corporation; Formosa Plastics Corporation, America; Formosa Plastics Corporation, Texas; Formosa Transrail Corporation; Lavaca Pipeline Company; Nan Ta Plastics Corporation, America; Nan Ya Plastics Corporation, Texas. Most of

32

these entities list 9 Peach Tree Hill Road, Livingston NJ as their mailing address.

182.    On Formosa Ha Tinh's Investment Certificate from February 2014, Formosa Plastics Corporation and the representative of Formosa U.S.A., Susan Wang, listed the same Taiwan address.

## B. <u>Plaintiffs Are Unable to Sue in Vietnam.</u>

183.    Any suit against Defendant in Vietnam would be futile and likely result in serious reprisals – both legal retaliation and physical attacks – against the Plaintiffs.

184.    In 2016, over 500 members of the communities affected by the disaster sued Formosa Ha Tinh in a Vietnamese court for damages related to loss of income and injuries to their health and mental well-being. In October 2016, the People's Court of the City of Ky Anh returned the petition without addressing the merits, citing insufficient documentation provided by the plaintiffs. When the plaintiffs attempted to appeal this decision, police violently prevented them from going to the higher court to file their papers.

185.    In another attempt to file a lawsuit against Formosa in Vietnam, another group of over 600 fisherman attempted to travel from Nghệ An Province to Hà Tĩnh Province in February 2017 to file complaints against Formosa. On their journey of almost 200 km to the courthouse, the complainants were followed and harassed by over 2,000 police personnel and stopped at roadblocks. At one point, plain-clothes policemen attacked and beat the complainants and other protesters who joined them. Eyewitnesses and media reported that police used tear gas, flash bombs, stones, and electronic batons to attack protestors. Several people were arrested and others were hospitalized.

186.    Furthermore, activism around this issue in Vietnam has been met with intense hostility from the government of Vietnam. Multiple people who have reported or blogged about

the toxic spill, calling attention to the disaster and asking for justice and accountability, have been jailed for expressing their views publically. The charges have included spreading propaganda or "abusing democratic freedoms", and have resulted in prison terms of up to 20 years in prison.

187.    For example, in 2017, blogger Nguyen Ngoc Nhu Quynh (known as "Mother Mushroom") was sentenced to 10 years in prison for publishing "anti-state propaganda" for blogging about the April 2016 disaster and calling for governmental accountability. Prior to her conviction she was held in incommunicado detention for many months. She received the International Woman of Courage Award from the U.S. government for her activism. In November 2017, Nguyen Van Hoa, a blogger reporting on the same issues, received a seven year sentence. On February 6, 2018, Hoang Duc Binh was sentenced to 14 years in prison for blogging about the April 2016 disaster. As a part of his activism, Hoang Duc Binh filmed and streamed police brutality against protestors calling for accountability for Formosa's actions, in addition to criticizing such violence committed by the police. In 2018, Le Dinh Luong, an activist who campaigned for democracy, demonstrated against Formosa, and has written about the environmental disaster was sentenced to 20 years in prison for "carrying out activities that aim to overthrow the people's administration" for these activities. His sentence was upheld on appeal. He was held in incommunicado detention for a year and prevented from accessing his defense lawyers only in the month before his trial. Nguyen Nam Phong, a victim of the disaster, was arrested and sentenced to two years in prison while driving to a protest for allegedly failing to obey orders by public officials.

188.    These incidences have been reported on and condemned by United Nations experts, including the Special Rapporteur on the implications for human rights of the

environmentally sound management and disposal of hazardous substances and wastes, the Special Rapporteur on the promotion and protection of the right to freedom of opinion and expression, the Special Rapporteur on the issue of human rights obligations relating to the enjoyment of a safe, clean, healthy and sustainable environment, the Special Rapporteur on the situation of human rights defenders, and the Special Rapporteur on the rights to freedom of peaceful assembly and of association.

189.    Even if not arrested, those who participate in activism around the disaster are targeted by police in other ways. For example, Bach Hong Quyen, an activists who helped organize a march marking the one year anniversary of the disaster was put under police surveillance. Hundreds of people who have protested demanding accountability have been arrested and some have faced physical violence from police. Others have had to flee the country to avoid persecution for speaking out on the topic.

190.    For example, in the direct aftermath of the disaster, regular protestors were occurring in May and June 2016; in response, the police arrested more than 500 people and beat demonstrators. On July 7, 2016, more than 3,000 residents of Quảng Bình Province began protesting Formosa Plastics Group and were attacked local police leading to injuries of dozens of people. In August 2016, 200 policeman blocked and attacked people attempting to march to protest the government's response to the environmental disaster. In October 2016, riot police violently attacked protestors who were demanding compensation for the spill. In March 2017, a small protest against Formosa of about 200 people was broken up by police (with the police arresting several people).

191.    The Vietnamese government gave out rewards and commendations to groups and individuals who suppressed protests about the toxic waste disaster. They acknowledged efforts to

issue such rewards in an official governmental letter from December 2016.

192.    According to international media, the Vietnamese government has also removed news about protests related to Formosa from the internet.

### C.  Class Action Allegations.

193.    This action is brought, in part, on behalf of a class of hundreds of residents of Vietnam similarly injured by the Formosa Ha Tinh toxic waste discharge, who have also sued Defendants and other responsible entities in Taiwan. Plaintiffs thus bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rules 23(b)(2), 23(b)(3), and/or 23(c)(4) of the Federal Rules of Civil Procedure, for damages and such other relief as the Court may find appropriate.

194.    *Class definition.* The class is defined as all individuals or representatives of individuals (including minors and deceased individuals) who were 1) residents of five affected provinces of Central Vietnam (Hà Tĩnh, Quảng Bình, Quảng Trị, Thừa Thiên–Huế, and Nghệ An) at any point between April 6, 2016, and June 30, 2016; and 2) who either a) relied, in whole or in part, upon the marine environment for their livelihood, b) ate seafood, and/or c) had contact with the coastal waters of Central Vietnam during this period; and 3) have filed suit against Defendants in Taiwan.

195.    *Numerosity* – Rule 23(a)(1). This class is sufficiently numerous to make joinder impracticable. There are approximately 7,875 members of the class.

196.    *Commonality* – Rule 23(a)(2) and 23(b)(3). The named Plaintiffs' injuries arise from a set of facts and circumstances common to that of the proposed class. The questions of law and fact common to the proposed class predominate over questions affecting only individual class members, and include, but are not limited to, the following:

- Whether the Formosa Ha Tinh Steel mill was the source of pollution that devastated the marine environment off the coast of Central Vietnam starting in April 2016;

- Whether Defendants are responsible for failing to appropriately supervise and manage the construction and operation of the Formosa Ha Tinh steel mill;

- Whether Defendants' actions in causing the Formosa toxic waste disaster violated Vietnamese law and/or any other applicable law;

- Whether Defendants are responsible for willfully rushing the Formosa Ha Tinh steel mill to completion without regard for quality control or environmental protection;

- Whether Defendants are liable for the culpable actions of the Formosa Ha Tinh Steel company and its agents on theories of vicarious liability, alter ego or integrated enterprise liability;

- Whether Defendants are liable for punitive damages for causing the Formosa toxic waste disaster;

- What law applies to Plaintiffs' claims, and the content of that law.

197.   *Typicality* – Rule 23(a)(3). The claims of the named Plaintiffs are typical of the proposed class members in that they all arise out of the same set of circumstances (the effects of the Formosa toxic waste disaster) and the same conduct by Defendants (causing the discharge). The injuries that the named Plaintiffs assert – including lost income and property, lost livelihoods, and physical injuries, as violations of Vietnamese law and other applicable laws – are typical of all members of the proposed class, and the damages and relief sought are similar because the injuries, future anticipated injuries, related costs, and additional consequential losses

are similar for all members of the proposed class.

198.     *Common Relief* – Rule 23(b)(2). Defendants have acted and/or failed to act, and continue to act and/or fail to act, on grounds generally applicable to the class, making damages as described above appropriate with respect to the class as a whole.

199.     *Adequacy* – Rule 23(a)(4) and 23(g)(1). The named Plaintiffs are able to, and will, fairly and adequately protect the interests of the proposed class because they fit within the definition for the proposed class, and their interests do not conflict with the interests of the members of the class they seek to represent. The named Plaintiffs will adequately represent the class in that their personal interest in the outcome of the case ensures that they will maintain an active awareness and involvement in the litigation so as to protect their own interests and those of the class. The named Plaintiffs are represented by counsel with experience in transnational tort litigation and class action litigation. The named Plaintiffs and class counsel intend to prosecute this action vigorously for the benefit of the entire class and can fairly and adequately protect the interests of all of the members of the class.

200.     *Superiority* – Rule 23(b)(3). A class action is the best method for the fair, just, and efficient adjudication of this litigation because individual litigation of class members' claims would be impracticable, economically and otherwise, and individual litigation would be unduly burdensome to the courts and parties. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### D.  **Applicable Law.**

201.     Plaintiffs' causes of action arise under and constitute torts under the following laws:

   a.   The constitutional, statutory, and common laws of Vietnam;

   b.   Statutes and common law of the State of New Jersey;

   c.   The common law of the United States of America; and

   d.   The laws of any other jurisdiction that may apply.

## VI.   CLAIMS FOR RELIEF

**BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS, JOINTLY AND SEVERALLY**

**FIRST CAUSE OF ACTION**

**Violation of Article 172 of the Vietnamese Civil Code, Civil Code No. 91/2015/QH13**

202.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage by a violation of the obligation to protect the environment, under Article 172 of the Civil Code of Vietnam and the laws of any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

**SECOND CAUSE OF ACTION**

**Article 584 of the Vietnamese Civil Code, Civil Code No. 91/2015/QH13**

203.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage intentionally or unintentionally which has harmed the life, health, honor, dignity, reputation, property or other legal rights or interests of a person, actionable under Article 584 of the Civil Code of Vietnam and the laws of any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

**THIRD CAUSE OF ACTION**

**Article 601 of the Vietnamese Civil Code, Civil Code No. 91/2015/QH13**

204.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage from sources of extreme danger, actionable under Article 601 of the Civil Code of Vietnam and the laws of any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## FOURTH CAUSE OF ACTION

**Article 13 of the Vietnamese Law on Fisheries, Law No. 18/2017/QH14**

205.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage to aquatic resources, actionable under Article 13 of the Vietnamese Law on Fisheries and the laws of any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## FIFTH CAUSE OF ACTION

**Article 112 of the Vietnamese Law on Environmental Protection, Law No. 55/2014/QH13**

206.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage by creating an environmental emergency that requires remediation under Article 112 of the Vietnamese Law on Environmental Protection, actionable under the laws of Vietnam and any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## SIXTH CAUSE OF ACTION

**Article 160 of the Vietnamese Law on Environmental Protection, Law No.**

**55/2014/QH13**

207.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage by environmental pollution and degradation that requires remediation, actionable under Article 160 of the Vietnamese Law on Environmental Protection and the laws of any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## SEVENTH CAUSE OF ACTION

**Article 34 of the Vietnamese Law on Water Resources, Law No. 17/2012/QH13**

208.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage by pollution of seawater that requires compensation, actionable under Article 34 of the Vietnamese Law on Water Resources and the laws of any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## EIGHTH CAUSE OF ACTION

**Article 38 of the Vietnamese Law on Water Resources, Law No. 17/2012/QH13**

209.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage by unlawful discharge of sewage into water sources that requires compensation, actionable under Article 38 of the Vietnamese Law on Environmental Protection and the laws of any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## NINTH CAUSE OF ACTION

## Article 61 of the Vietnamese Law on Natural Resources and Environment of Sea and Islands, Law No. 82/2015/QH13

210.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) which caused damage by irregular dumping activities that requires compensation, actionable under Article 61 of the Vietnamese Law on Natural Resources and Environment of Sea and Islands and the laws of any other applicable jurisdiction. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## TENTH CAUSE OF ACTION

### Public Nuisance

211.    Defendants are liable to Plaintiffs for their acts and omissions (on their own and through their agents and employees, including their divisions and subsidiaries) that created a public nuisance, by which Plaintiffs have each been uniquely injured, actionable under New Jersey law and the laws of any other applicable jurisdiction. Defendants are liable for this nuisance in part because they engaged in ultra-hazardous activities, namely, the construction and operation of a steel mill. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## VII.    PRAYER FOR RELIEF

212.    WHEREFORE, each and every Plaintiff respectfully prays for judgment against defendant as follows:

a.  For compensatory damages;

b.  For punitive damages;

c.  For costs of suits, attorneys' fees; and

d.  For such other relief as the Court deems just and proper.

## VIII.  <u>JURY TRIAL DEMANDED</u>

213.    Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: October 8, 2019              Respectfully submitted,

                                  By: _/s/ Judith Brown Chomsky_____

                                  Judith Brown Chomsky
                                  LAW OFFICES OF JUDITH BROWN CHOMSKY
                                  8120 New 2nd Street
                                  Elkins Park, PA 19027
                                  Telephone: (215) 266-7170
                                  Facsimile: (866) 216-4358
                                  judithchomsky@icloud.com

                                  Marco Simons
                                  LAW OFFICE OF MARCO SIMONS
                                  1050 Connecticut Ave #65225
                                  Washington, DC 20035
                                  Telephone: 917-696-3304
                                  marco.b.simons@gmail.com
                                  (*Pro hac vice*)